USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/12/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSELITO MONTANEZ,

                    Plaintiff,

   -against-

WILLIAM LEE, *et al.*,

                    Defendants.

14-cv-3205 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Plaintiff Joselito Montanez brings this action *pro se* pursuant to 42 U.S.C. § 1983 against Defendants William Lee, Edward Burnett, Mark Royce, Coleman Wilson, William Plimely, Ralph Garnot, Robert Cocuzza, Duane Malark, Laura Stanaway, Angeline Stevenson, Michael E. Mills, Allen Deese, Alexander Mazzone, James Thorpe, and Richard Vance, all current or former employees of the New York State Department of Corrections and Community Supervision ("DOCCS").[1] Plaintiff alleges, among other things, that Defendants failed to protect him from assaults by other inmates during his incarceration at Green Haven Correctional Facility ("Green Haven"). Presently before the Court is Defendants' motion to dismiss. (ECF No. 54.) For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

---

[1] Defendants Fisher, Vasquez, and Velez have not been served. (Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint, ECF No. 55 ("Defs.' Mot.") at 1, n.1.) Even though these Defendants have not been served, Plaintiff's allegations against Defendants Vasquez and Velez are identical to the allegations against Defendant Deese and accordingly are treated the same. Additionally, Plaintiff asserts the same claim against Defendants Fisher and Stanaway, so the analysis of the claim against Defendant Stanaway applies with equal force to the claim against Defendant Fisher.

Copies mailed/faxed 7/12/2016
Chambers of Nelson S. Román, U.S.D.J.

## BACKGROUND[2]

### I.     Factual Background

On March 31, 2012, at approximately 3:00 p.m., Plaintiff entered the "H-Block" housing unit at Green Haven from the recreational yard. (Am. Compl. ¶ 10.) While walking up the stairs, Plaintiff was attacked from behind by an unknown inmate, who stabbed Plaintiff in the back with an unknown object. (*Id.*) Plaintiff was again struck between the eyebrows and began to bleed profusely. (*Id.*) Defendants Vasquez, Velez, and Deese witnessed this attack (the "First Attack") yet left the area without assisting Plaintiff. (*Id.*) Plaintiff further alleges that Defendants Vasquez, Velez, and Deese were aware that in the week prior to the First Attack there were other attacks on Latino inmates. (*Id.*)

Inmate Cesar Morillo discovered Plaintiff bleeding on the floor and, while attempting to help Plaintiff to his feet, became entangled with Plaintiff and they both fell to the floor. (*Id.* ¶ 11.) Plaintiff told Morillo to leave so that he would not get blamed for Plaintiff's injury. (*Id.*) As Morillo left, he was stopped by Defendant Mazzone. (*Id.*) Defendant Mazzone did not witness the attack on Plaintiff, but "knowingly fil[ed] a false report alleging that Prisoner Morillo attacked Plaintiff" to cover-up the attack. (*Id.*) Plaintiff further alleges that Defendant Mazzone was deliberately indifferent to Plaintiff's safety by virtue of being the only officer on the company responsible for supervising over sixty inmates when he knew Latino inmates had been

---

[2] The following facts are derived from Plaintiff's amended complaint (the "Amended Complaint," ECF No. 10), the original complaint (the "Original Complaint," ECF No. 2), and the exhibits to the Original Complaint. Though an amended complaint typically "supplant[s], rather than supplement[s]," a prior complaint, in the case of *pro se* plaintiffs, courts typically consider allegations in both an original and amended complaint. *Lewis v. Weiss*, No. 12-cv-07242 (ALC), 2016 WL 1718251, at *3 (S.D.N.Y. Apr. 27, 2016) (citing *Davila v. Lee*, No. 11-cv-496 (LTS) (FM), 2014 WL 7476207, at *1, n. 1 (S.D.N.Y. Dec. 30, 2014), *report and recommendation adopted*, 2015 WL 1573323 (S.D.N.Y. Apr. 9, 2015); *Anthony v. Brockway*, No. 15-cv-451, 2015 WL 3419536, at *1 (N.D.N.Y. May 27, 2015)). This is to afford a *pro se* plaintiff additional leeway in his or her pleadings.

attacked in the previous week. (*Id*. ¶ 12.) Plaintiff contends he grieved this issue and has exhausted all administrative remedies. (*Id*. ¶ 13.)

Plaintiff was treated by medical staff in the Green Haven hospital and then was sent to Putnam Hospital. (*Id*. ¶ 16.) Plaintiff was treated for puncture wounds to the lower back and puncture wounds to his right shoulder. (*Id*.) Plaintiff also received stitches, which resulted in permanent scarring. (*Id*.) Plaintiff was hospitalized for 14 days. (*Id*.) Medical staff concluded that Plaintiff's injuries were consistent with an attack using an ice pick or other similar weapon, which was found on the second company in the H-Block. (*Id*.) Plaintiff was placed in involuntary protective custody ("IPC") on April 2, 2012. (*Id*. ¶ 11.) While in recovery, Plaintiff was interviewed by Defendant Malark, as authorized by Defendant Royce, about the incident. (*Id*.) Defendant Malark assured Plaintiff that the information Plaintiff provided to him would be kept confidential, but that "was not the case." (*Id*.)

On or about April 23, 2012, Plaintiff was released from IPC under Defendant Lee's order and was placed back into Green Haven's general population. (*Id*. ¶ 14(1).)[3] Thereafter, Plaintiff received numerous, unsigned notes containing death threats. (*Id*.) Plaintiff told Defendant Stevenson "and higher authority" about the death threats, but they did not take any action. (*Id*. at 14(2).)

Plaintiff was attacked subsequently on June 25, 2012 (the "Second Attack"). (*Id*. ¶ 15.) While in the Green Haven law library under the supervision of Defendant John Doe, Plaintiff was attacked in the bathroom by an unknown prisoner, who struck Plaintiff with a closed fist across his head and body. (*Id*. ¶ 18.) Plaintiff lost consciousness and fell to the floor, where he remained for approximately 45 minutes. (*Id*.) When Plaintiff regained consciousness, he noticed

---

[3] Two paragraphs of the Amended Complaint are numbered "14." The first paragraph 14 will be cited at 14(1) and the second paragraph 14 will be cited at 14(2).

he was bleeding and that Defendant John Doe had left the library without securing the area or following Green Haven's procedures for alerting security following an attack.  (*Id*.)  Plaintiff walked several corridors yelling for help and lost consciousness again.  (*Id*.)

Plaintiff regained consciousness again and was treated by Green Haven medical staff for his injuries.  (*Id*. ¶ 19.)  Defendant Vance interviewed Plaintiff about the Second Attack and told Plaintiff that he knew about the First Attack.  (*Id*.)  Plaintiff informed Defendant Vance that he had "not gotten a good look" at the inmate who attacked him and requested protection from any further attacks.  (*Id*.)  Defendant Vance told Plaintiff that if he could not identify the attackers and their housing locations, Plaintiff could not go into protective custody.  (*Id*. ¶ 20.)  Plaintiff did not know his attackers' identities, so he returned to the general population.  (*Id*.)  Once again, Plaintiff received anonymous threats, such as "want some cheese rat"; "your [sic] going to burn mickey," with a mouse's face; and "stop snitching bitch."  (*Id*.)  Plaintiff alerted the company correction officer, who told Plaintiff "that's your problem."  (*Id*.)  Plaintiff requested a transfer from Defendant Stevenson and higher authority, but no action was taken.  (*Id*.)

A few days after the Second Attack, another inmate, Flaco, told Plaintiff the reason for the Second Attack was because the attacker overheard Defendant Cocuzza telling Defendant Thorpe that Plaintiff was a "snitch."[4]  (*Id*.)  Plaintiff confronted Defendant Cocuzza about his conversation with Defendant Thorpe, and Defendant Cocuzza told him to "stop snitching."  (*Id*.)  Plaintiff filed a grievance against Defendants Cocuzza and Thorpe.  (*Id*. ¶ 21.)  Several days later, Defendant Thorpe approached Plaintiff's cell and verbally harassed Plaintiff, stating:

> Plaintiff was the type who likes to file grievances and that it really
> doesn't matter if [he] filed a grievance because [he] is a 'snitch' and
> that it's good what happen[ed] to him he deserved it and wherever
> [he] goes that Defendant Thorpe will let the other jails know that
> [he] is a snitch that way the other officers will pass word down to

---

[4] Plaintiff refers to Defendant Cocuzza as "Cacuzzi."

the prisoners and [he] will get what's coming to him and there's
nothing [that can be] done.  (*Id.*)

Plaintiff began to shake nervously.  (*Id.*)  Plaintiff claims he grieved this issue.  (*Id.*)

Plaintiff was placed in protective custody on July 10, 2012.  (*Id.* ¶ 22.)  Plaintiff alleges
that he was only placed in protective custody because Defendants Plimely and Burnett knew
about the First Attack and were "attempting to remedy their negligence."  (*Id.*)

On or about August 21, 2012, Plaintiff made several Freedom of Information Law
("FOIL") requests to Defendant Mills requesting documents and information regarding the
Second Attack.  (*Id.* ¶ 24.)  Defendant Mills has refused to provide Plaintiff with any documents,
informing Plaintiff that no such documents or information exist.  (*Id.*)  Plaintiff alleges that
Defendant Mills destroyed the documents.  (*Id.*)  Subsequently, Plaintiff sent a letter to the
Department of Justice's Office of Information explaining that Defendant Mills was violating his
rights in refusing to provide Plaintiff with the requested documents and information.  (*Id.* ¶ 25.)
Thereafter, Defendant Mills falsely stated that he provided Plaintiff with the requested
information.  (*Id.*)  Plaintiff alleges that he has not been able to learn the identity of Defendant
Doe because of Defendant Mills' actions.  (*Id.*)

On or about June 5, 2012 and September 21, 2012, Plaintiff attempted to mail notices of
intention to the New York State Attorney General to pursue a claim for loss of personal property
and injuries sustained during the First Attack and Second Attack.  (*Id.* ¶ 28.)  Defendant Fisher
refused to send out the two notices.  (*Id.*)  Plaintiff contends that he filed a grievance on this
issue, but Defendant Stanaway refused to acknowledge Defendant Fisher's wrongdoing.  (*Id.* ¶
29.)

II.     **Plaintiff's Grievances**

Plaintiff alleges at various points in the Amended Complaint that he exhausted his claims. (Am. Compl. ¶¶ 13, 21, 26, 30.)  Additionally, Plaintiff attached various grievances, which he references in his opposition brief, to the Original Complaint.  (ECF No. 2.)[5]

On April 25, 2012, Plaintiff submitted the following grievance (the "First Grievance"):

> On March 31, 2012 I was involved in a incident, which I [] acquired several injur[ies], as a result I was in the hospital for 14 days.  I immediately ask for a grievance form.  In which this time I was advised there aren't any forms in this area.  That I would have to wait to I was transfer my next area.  On April 13th I went to SHU.  My complaint is about security risks, in which their [sic] was no other officer on the 3 deck when normally there is.  Therefore my complaint is if there was this incident could have been avoided from severe damage.  I want to know what C.O. is assigned to that area and why he or she was not in the area.

(ECF No. 2-2 at 1.)  Additionally, Plaintiff requested the following action:

> Who was the C.O. assigned to that company on 4/31/2012 when rec comes in and why he or she was not on post and that I be [monetarily] comp[e]nsated for my injuries and all staff involved by [reprimanded].[6]

(*Id*.)  On July 6, 2012, Defendant Lee issued a decision noting that the First Grievance requested information that Plaintiff "could obtain through the FOIL mechanism."  (*Id*. at 3.)  Plaintiff appealed to the CORC.  On November 21, 2012, CORC unanimously accepted Plaintiff's grievance in part and scheduled it for an IGRC hearing.  (*Id*. at 4.)

---

[5] Though Judge Preska determined that Plaintiff's amended complaint would supplant, rather than supplement, his original complaint, the Court nevertheless will consider the grievances appended as exhibits to the original complaint.  Plaintiff alleges in the Amended Complaint that he exhausted his administrative remedies through the grievance process.  Accordingly, the grievances are integral to the Amended Complaint and may be considered by the Court without converting the instant motion to a motion for summary judgment.  *Hofelich v. Ercole*, No. 07-cv-8059 (PKC) (DFE), 2008 WL 2796636, at *2 (S.D.N.Y. July 17, 2008).

[6] Though the grievance states that Plaintiff wishes to know the officer assigned on 4/31/2012, the Court presumes Plaintiff intended to write 3/31/2012 since that is the date indicated in the description of the problem and is the date of the First Attack as alleged in the Amended Complaint.

On May 3, 2012, Plaintiff submitted the following grievance (the "Second Grievance"):

> On March 31, [2012], I was involved in a incident in which I received severe injuries, one pin point puncture wound to my right lower back one inch laceration between the eyebrows and [unreadable] pinpoint wounds to my right shoulder. As a result I was hospitalized for 14 days. On April 13th I was transferred to SHU. My complaints due to the failure of lack of security, my health and wellbeing. I was nearly killed because of the negligence of DOCCS and Green Haven security [personnel] policy in maintaining the integration [unreadable], correctional staff and offenders in population.

(*Id*. at 6.) Additionally, Plaintiff requested the following action:

> [Compensation] for loss of property/mental state, personal injuries, damages [unreadable] from emotional distress. And for Dept. of Superintendent of Security and captains to be [reprimanded] for the [repercussion] in their investion [sic] and the health, safety and security minataining the good order of the facility.

(*Id*.)

On May 11, 2012, Plaintiff submitted the following grievance (the "Third Grievance"):

> On March 31, 2012, I was injured in a incident which I received [severe] injuries one pinpoint wound to the lower back one inch laceration between the eyebrows, and ½ inch laceration on the shoulder cause by the type weapon on the I deck in the H block, due to the lack of security from DOCCS. I was hospitalize for 14 days in the hospital. I've made prior attempts to file this grievance and Laura Stanaway, [] continuously sent them back to me for personal various reasons.

(*Id*. at 8.) Additionally, Plaintiff requested the following action:

> That I be [monetarily] compensated for my injuries and that Laura Stanaway file this grievance and that Dept. Superintendent of Security and Sgt. Involved in this matter be [reprimanded].

(*Id*.) On July 9, 2012, Plaintiff submitted the following grievance (the "Fourth Grievance"):

> Several day's prior, a couple of inmates overheard Sgt Cozzia talking to C.O. Thorpe stating that I Montanez Joselito [inmate number] was a snitch. I've been receiving several threats behind this incident. Notes stating "stop snitchin bitch" "Your going to

7

burn mickey" with drawing of mouse "so you want some cheese rat."  I now feel my life is in danger and requesting immediate transfer.  I do not feel safe in this jail anymore.

(*Id*. at 14.)  Additionally, Plaintiff requested the following action:

That Lara Stanaway file this complaint immediately and that a investigation be done by Dept William Lee and I receive a response quick with grievance number.

On July 13, 2012, Defendant Stanaway, Acting IGP Supervisor, notified Plaintiff via a written memorandum that she received the Fourth Grievance and was forwarding it "immediately to the DSS, even prior to numbering."  (*Id*. at 16.)[7]

On September 27, 2012, Plaintiff submitted the following grievance (the "Fifth Grievance"):

This complaint is about superintendent William A. Lee on several occasion I had made attempts on 06/05 and 09/21 to send certified mail return receipt to [serve] the attorney office in which I explain is the only way the office acknowledges your legal mail.  I also explain that I am on a dead-line and that he is [violating] my [1st] amendment to gain access to the courts.  Also I had written prior to this about my claims but still to no [unreadable].  Therefore I going to take administrative action against him.  Dealing with this issue.

(*Id*. at 20.)  Additionally, Plaintiff requested the following action:

That Lara Stanaway filed this complaint and number it and to [investigate] these issues at hand.  And to respond to my as soon as possible.

(*Id*.)  On October 1, 2012, Defendant Stanaway responded to the Fifth Grievance.  She informed Plaintiff that she called the mail room supervisor who "has not received any correspondence regarding a denial of legal mail, from you."  (*Id*. at 22.)  She further informed Plaintiff that

---

[7] The written memo from Defendant Stanaway also appears to be signed by Defendant Burnett.  (ECF No. 2-2 at 16.)

Defendant Lee "does not process the mail." (*Id.*)  She requested Plaintiff provide her with

additional information to enable IGRC to investigate the matter. (*Id.*)

On October 15, 2012, after being transferred to the Auburn Correctional Facility, Plaintiff

filed the following grievance (the "Sixth Grievance"):

> I was on Green Haven C.F. I filed a claim 4/28 and then other
> one. I wrote a grievance on this issue as well 6/18 still no reply.
> I notarize a letter to Brandow claim supervisor.  I had two Sgt
> who knew about my property lost.  Sgt. Markark also Sgt.
> Cucozzi its been 6 months and still nothing.  All items lost were
> on my package list and as well as receipts.

(*Id.* at 26.)  Additionally, Plaintiff request the following action:

> Ms. Parmiter file and number this grievance and I be put on a
> call-out to deal with this issue as soon as possible.

(*Id.*)  The Superintendent determined that the Sixth Grievance was untimely and Plaintiff could

pursue his claim via the court of claims. (*Id.* at 28.)

On December 18, 2012, Plaintiff filed the following grievance (the "Seventh

Grievance"):

> I made numerous attempts to FOIL information based on
> security issues dealing with my safety.  I've just received a
> response from IGRC in Green-Haven.  Mr. Mills is FOIL
> officer and is claiming he issued me the paperwork I requested.
> That is false, I never receive any paperwork whatsoever.  The
> information I need deals with the C.O.'s, Sgt, that are involved
> in the 6/25/12 incident.  I written to Counselor Kennedy, FOIL
> Officer about the same issues dealing with this matter.  It has
> been 6 months and still nothing.

(ECF No. 2-3 at 4.)  Additionally, Plaintiff request the following action:

> That I receive the information I require from FOIL and that Ms.
> Parmiter file and number this complaint and any documents
> dealing with this issue be produce with my signature.

(*Id.*)

### III.   Procedural History

On April 25, 2014, Plaintiff filed the Original Complaint.  On October 6, 2014, Judge Loretta A. Preska issued an order directing Plaintiff to amend the Original Complaint ("Order to Amend").  (ECF No. 9.)  In the Order to Amend, Judge Preska concluded that, with respect to Plaintiff's failure to protect claims under the Eighth Amendment, "Plaintiff names individuals in his complaint without providing facts that demonstrate how their actions or omissions contributed to Plaintiff's harm."  (ECF No. 9 at 4.)  In particular, Plaintiff failed to allege "that prison staff knew or had reason to know that Plaintiff's health or safety was at risk" the day of the First Attack or that they witnessed it and failed to take action.  (*Id.* at 5.)  Merely stating that Defendants Velez, Vasquez, and Deese were posted nearby "does not suggest deliberate indifference."  (*Id.*)  Judge Preska also concluded that Plaintiff's allegations against Defendants Plimely, Garnot, Royce, and Malark did not establish that they acted with deliberate indifference because Plaintiff merely alleged that Defendant Plimely told Defendant Garnot about the First Attack; Defendant Garnot recommended Plaintiff's placement in IPC; Defendant Royce approved the IPC placement; and Defendant Malark promised Plaintiff confidentiality.  (*Id.*)

As for the Second Attack, Judge Preska concluded that Plaintiff may have viable deliberate indifference claims because the First Attack had occurred and Plaintiff had expressed his fear to prison officials and requested a transfer.  (*Id.*)  However, the Original Complaint was deficient because he did not explain why the Defendants should be liable, either due to their personal involvement or in a supervisory liability capacity.  (*Id.*)

With respect to Plaintiff's access to courts claim, Judge Preska noted that Plaintiff was required to plead an actual injury as a result of the prison officials' interference with his mail,

such as prejudice in the ability to pursue a legal claim.  (*Id.* at 6.)  The Original Complaint did not plead an actual injury.  (*Id.*)

Judge Preska also addressed several other deficient claims.  First, Plaintiff's allegation that Defendant Mills improperly denied his FOIL request does not support a due process claim because New York state law does not create a property interest in obtaining documents.  (*Id.*)  Second, Plaintiff's allegation that Defendant Mazzone filed a false misbehavior report does not give rise to a claim without further allegations that it was filed in retaliation for Plaintiff's exercise of his constitutional rights.  (*Id.* at 7.)  Third, Plaintiff's allegations regarding the destruction or loss of his property in prison do not give rise to a claim because Plaintiff did not allege he was denied an adequate posdeprivation remedy.  (*Id.*)  Fourth, Plaintiff's allegation that Defendant Stanaway failed to process his grievances does not support a claim because "[p]rison grievance procedures do not confer any substantive right upon a prisoner requiring the procedural protections envisioned by the Fourteenth Amendment."  (*Id.*)

Judge Preska granted Plaintiff leave to amend the Original Complaint and directed him to do the following: (1) name all the individual defendants in the caption, or name John Doe or Jane Doe defendants to the extent names are unknown; (2) state the titles of those defendants, if possible; (3) describe the relevant events, including what each individual defendant did or failed to do that caused a deprivation of his federal rights; (4) give approximate dates and times of the events; (5) state the location of each event; (6) describe the injuries suffered; and (7) state the requested relief.  (*Id.* at 8–9.)  Judge Preska further noted that "Plaintiff's amended complaint will completely replace, not supplement, his original complaint."  (*Id.* at 9.)

On December 11, 2014, Plaintiff filed the Amended Complaint.  (ECF No. 10.)  On December 30, 2014, the case was reassigned to this Court.  Thereafter, on January 20, 2016, Defendants filed a motion to dismiss the Amended Complaint.  (ECF No. 54.)

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 566 U.S. at 678.  Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).  A court should accept non-conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008).  "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998)).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*."  *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  The court should read *pro se* complaints "to raise the strongest arguments that they suggest."  *Pabon*

12

*v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).  Even so, "pro se plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks omitted).  Dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief," and the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

### I.      Exhaustion

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

Exhausting all remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Washington v. Chaboty*, No. 09-cv-9199 (PGG), 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009)) (internal quotation marks and citations omitted). "[B]ecause 'it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion[,] . . . [t]he exhaustion inquiry . . . requires that [the court] look at the state

prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).  A plaintiff must invoke all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007).  *See also Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004).  The Defendants bear the burden of demonstrating that Plaintiff's claim is not exhausted. *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009).  Where a prisoner has failed to exhaust some, but not all, of the claims included in the complaint, the PLRA does not require dismissal of the entire complaint. *Tafari v. Hues*, 539 F. Supp. 2d 694, 697 (S.D.N.Y. 2008) (citing *Jones*, 549 U.S. at 219–24).  Instead, the court dismisses the unexhausted claims and proceeds to adjudicate the exhausted claims. *Jones*, 549 U.S. at 224.

"[A] motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if 'nonexhaustion is clear from the face of the complaint.'" *Lopez v. Cipolini*, No. 14-cv-2441 (KMK), 2015 WL 5732076, at *4 (S.D.N.Y. Sept. 30, 2015) (citing *Lovick v. Schriro*, No. 12–cv–7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted)).  *See also Lee v. O'Harer*, No. 13–cv–1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04–cv–8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

14

Defendants argue that Plaintiff failed to exhaust (1) his claims regarding the First Attack, (2) his claims regarding the Second Attack, and (3) his retaliation claims. The Court evaluates whether these claims were exhausted properly below.

## A. First Attack

Plaintiff contends that Defendants Vasquez, Velez, and Deese were deliberately indifferent to his safety because they witnessed the First Attack yet failed to assist Plaintiff. (Am. Compl. ¶ 10.) Though a *pro se* prisoner plaintiff is not required to name the responsible parties in his grievance, he must "provide a specific description of the problem." *Espinal*, 558 F.3d at 127. *See also Ocampo v. Fischer*, No. 11-cv-4583 (CBA) (MDG), 2014 WL 7422763, at *13 (E.D.N.Y. Dec. 31, 2014) (quoting 7 N.Y. C.R.R. § 701.5(a)(2)) ("In New York prisons, the inmate's grievance is required to offer a 'concise specific description of the problem and the action requested.'"). Moreover, "the mere fact that plaintiff filed *some* grievance, and fully appealed all the decisions on that grievance, does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to that grievance." *Turner v. Goord*, 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005).

In the present case, none of Plaintiff's grievances describe prison officials witnessing the First Attack and failing to assist Plaintiff. In fact, the description of the First Attack in the First Grievance directly contradicts Plaintiff's assertion that Defendants Vasquez, Velez, and Deese acted with deliberate indifference. Plaintiff states in the First Grievance that the source of his complaint is "security risks" and that there was no officer located on the "3 deck" to supervise the area and assist Plaintiff after the attack. (ECF No. 2-2 at 1.) Additionally, the Second Grievance and the Third Grievance assert complaints regarding the lack of security which led to

the First Attack.  Accordingly, Plaintiff did not sufficiently exhaust his Eighth Amendment

claims against Defendants Vasquez, Velez, and Deese arising out of the First Attack.[8]

Plaintiff also asserts that Defendant Mazzone falsely accused Morillo of committing the

First Attack as part of a cover-up.  (Am. Compl. ¶ 11.)  However, as with Plaintiff's claims

against Defendants Vasquez, Velez, and Deese, none of the grievances, even under their most

liberal interpretation, describe an officer attempting to cover-up the First Attack.  Therefore, the

Court finds that Plaintiff also failed to exhaust his claim against Defendant Mazzone arising out

of the First Attack.

### B. Second Attack

Though Plaintiff alleges that he "[exhausted] all [administrative] remedies" with respect

to the Second Attack (Am. Compl. ¶ 21), it is clear from the face of the Original Complaint,

Amendment Complaint, and incorporated documents that none of Plaintiff's grievances even

describe the events underlying the Second Attack, let alone the actions or inactions of the

individual officers that were involved in the Second Attack.  Accordingly, Plaintiff did not

exhaust the following claims:

- the deliberate indifference claim against Defendant Malark premised upon Defendant Malark's conversation with Plaintiff following the First Attack and Defendant Malark's alleged knowledge of threats to Latino inmates;

- the deliberate indifference claims against Defendants Garnot and Royce premised upon their decision to place Plaintiff in IPC following the First Attack and subsequently release him prior to the Second Attack;

- the deliberate indifference claims against Defendants Plimely and Burnett premised upon their decision to place Plaintiff in IPC following the Second Attack;

---

[8] Plaintiff's conclusory allegation that he "filed a grievance on this issue and has [exhausted] all [administrative] remedies" does not alter the Court's conclusion.  (Am. Compl. ¶ 13.)

- the deliberate indifference claim against Defendant Vance premised upon Defendant Vance's interview of Plaintiff following the Second Attack;

- the deliberate indifference claim against Defendant Lee based upon Defendant Lee's release of Plaintiff from IPC prior to the Second Attack; and

- the deliberate indifference claim against Defendant Stevenson based upon Defendant Stevenson's failure to take actions to protect Plaintiff after Plaintiff informed Defendant Stevenson that he had received threats.

### C.  Retaliation

Plaintiff asserts that Defendant Thorpe retaliated against Plaintiff for filing the Fourth Grievance.  (Am. Compl. ¶ 21.)  The Fourth Grievance describes certain threats Plaintiff received as a result of other inmates overhearing a conversation between Defendants Cocuzza[9] and Defendant Thorpe about Plaintiff being a snitch.  However, none of the grievances subsequently filed by Plaintiff describe Defendant Thorpe confronting Plaintiff after Plaintiff filed the Fourth Grievance.  "[P]risoners must grieve or otherwise administratively exhaust any and all claims—including claims of retaliation . . .—before bringing them to Court."  *Richardson v. Hillman*, 201 F. Supp. 2d 222, 228 (S.D.N.Y. 2002).  Though Plaintiff need not have articulated the legal elements of retaliation in his grievance, his grievance must, at a minimum, provide DOCCS with a concise description of the wrongdoing—here, Defendant Thorpe's alleged verbal harassment of Plaintiff after Plaintiff filed a grievance against him—sufficient to investigate Plaintiff's complaint.  Accordingly, the Court finds that Plaintiff failed to exhaust his retaliation claim.

## II.    Plaintiff Is Not Excused from Exhausting His Claims

A prisoner is required to exhaust *available* grievance procedures.  *See Ross v. Blake*, 136 S. Ct. 1850, 1852 (2016) ("*Blake*").  It follows then that failure to exhaust is only excused when

---

[9] Plaintiff refers to Defendant Cocuzza as "Cozzia" in the Fourth Grievance.  (ECF No. 2-2 at 14.)

grievance procedures are *unavailable*.  *Id*.[10]  In *Blake*, the Supreme Court enumerated three circumstances in which grievance procedures would be unavailable.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  136 S. Ct. at 1859.  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."  *Id*.  Third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation [,]" a prisoner's failure to exhaust may be excused.  *Id*. at 1860.

Plaintiff does not contend that the prison grievance procedures were unavailable to him—nor could he.  It is evident from the pleadings that Plaintiff was familiar with the grievance process and frequently availed himself of this administrative remedy.  Accordingly, Plaintiff is not excused from exhausting his claims.

## III.    Failure to State a Claim

Having dismissed certain claims on exhaustion grounds, the Court now turns to its substantive analysis of the remaining claims and whether Plaintiff has properly amended his claims in light of Judge Preska's October 6, 2014 Order.

---

[10] Prior to the Supreme Court's decision in *Blake*, the Second Circuit had recognized a special circumstances exception to exhaustion.  *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).  However, in *Blake*, the Supreme Court rejected the special circumstances exception, holding that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."  136 S. Ct. at 1857.

### A.  Defendants Cocuzza and Thorpe

#### i.      Eighth Amendment Claims Against Defendants Cocuzza and Thorpe

Plaintiff raises Eighth Amendment claims against Defendants Cocuzza and Thorpe. While "'the spreading of rumors [by a corrections officer] alone does not amount to a constitutional violation,'" (*Bouknight v. Shaw*, No. 08-cv-5187 (PKC), 2009 WL 969932, at *4 (S.D.N.Y. Apr. 6, 2009) (quoting *Williams v. Mullen*, No. 98-cv-5204 (BSJ), 2001 WL 936297, at *4 (S.D.N.Y. Aug. 17, 2001)) "a prisoner can state a claim under the Eighth Amendment against a corrections officer who spreads malicious rumors about him if the rumors 'incited other inmates to assault [the plaintiff] . . ., thereby placing him at grave risk of physical harm.'" *Bouknight*, 2009 WL 969932, at *4 (quoting *Young v. Coughlin*, No. 93-cv-262 (DLC), 1998 WL 32518, at *7 (S.D.N.Y. Jan. 29, 1998)).  "However, if the plaintiff fails to allege—with concrete facts, not conclusory assertions—that he has suffered an objectively 'sufficiently serious' injury or that the corrections officer acted with a 'sufficiently culpable state of mind,' then the claim must be dismissed." *Bouknight*, 2009 WL 969932, at *4 (citation omitted).

In the present case, Plaintiff alleges that Flaco, another inmate, informed him that the reason for the Second Attack was that other inmates had overheard Defendants Cocuzza and Thorpe calling Plaintiff a snitch.  (Am. Compl. ¶ 20.)  Defendants argue this allegation is insufficient to support an Eighth Amendment claim because "Plaintiff does not allege that Defendant Cocuzza told inmates that Plaintiff was a snitch or witnessed Defendant Cocuzza label him a snitch to another inmate who then assaulted him."  (Defs.' Mot. at 18.)  The Court disagrees.  While Plaintiff does not allege that Defendants Cocuzza and Thorpe directly informed other inmates that Plaintiff was a snitch, he does allege that inmates overheard Defendants Cocuzza and Thorpe calling Plaintiff a snitch and, as a result, he was physically attacked (the

Second Attack).  "Courts have recognized that being labeled a snitch in the prison environment can indeed pose a threat to an inmate's health and safety in violation of the Eighth Amendment." *Hamilton v. Fischer*, No. 6:12-cv-6449 (MAT), 2013 WL 3784153, at *15 (W.D.N.Y. July 18, 2013).  Where, as here, a plaintiff alleged that he suffered actual, serious harm as a result of prison officials labeling him a snitch, he has properly pled his claim.  *See Campbell v. Gardiner*, No. 12-cv-6003, 2014 WL 906160, at *4 (W.D.N.Y. Mar. 7, 2014) (collecting cases). Accordingly, the Court declines to dismiss the Eighth Amendment claims against Defendants Cocuzza and Thorpe.

### B. Defendant Mills

In the October 6, 2014 Order, Jude Preska determined that Plaintiff's allegation that Defendant Mills improperly denied his FOIL request did not support a due process claim because New York state law does not create a property interest in obtaining documents.  (ECF No. 9 at 6.)  Now, in the Amended Complaint, Plaintiff appears to reassert his claim that Defendant Mill's failure to fulfill his FOIL request deprived him of due process.  (Am. Compl. ¶¶ 23–24.) "For a due process claim to succeed, the court must first be satisfied that the plaintiff possessed a property interest that was subsequently denied by the defendant's challenged actions." *O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 432 (S.D.N.Y. 2004).  However, various courts in this District have made clear that a plaintiff does not possess a property interest in obtaining FOIL documents.  *Id*. (citing *Webb v. Ashburn*, No. 96-cv-0325 (SAS), 1997 WL 118355 (S.D.N.Y. Mar. 17, 1997); *Billups v. Millet*, No. 91-cv-6326, 1996 WL 99399 (S.D.N.Y. Mar. 6, 1996)).  Accordingly, the Court dismisses Plaintiff's due process claim against Defendant Mills relating to Defendant Mills' failure to provide Plaintiff with FOIL documents.

Additionally, to the extent Plaintiff attempts to assert a claim that Defendant Mills denied his FOIL requests to cover up the Second Attack, the allegations in the Amended Complaint are conclusory and fail to state a claim. *See Johnson v. Barney*, No. 04-cv-10204 (LBS), 2006 WL 3714442, at *2 (S.D.N.Y. Dec. 13, 2006), *adhered to on denial of reconsideration*, No. 04-cv-10204 (LBS), 2007 WL 900977 (S.D.N.Y. Mar. 22, 2007), *aff'd*, 360 F. App'x 199 (2d Cir. 2010) (holding that an allegation that defendant filed a falsified investigative report to cover up wrongful acts of other correction officers fails to state a claim).

### C.  Defendant Stanaway

The Court next turns to Plaintiff's claim that Defendant Stanaway violated his due process rights by "refusing to mail . . . two notices of intention by certified mail."  (Am. Compl. ¶ 31.)  "It is well established that all persons enjoy a constitutional right of access to the courts . . . ."  *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997).  "Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."  *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).  However, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."  *Id.* (citations omitted).  "In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, *i.e.*, took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim."  *Monsky*, 127 F.3d at 247 (internal citation and quotation omitted).

Plaintiff alleges that Defendant Fisher refused to mail two notices of intention required to pursue a claim in the New York State Court of Claims and that Defendant Stanaway "refused to acknowledge any wrong-doing on Defendant Fisher's part."  (Am. Compl. ¶¶ 28–29.)  Plaintiff further alleges that he was hindered in his ability to pursue legal claims for loss of property and

certain injuries because these Defendants refused to mail his notices of intention.  (*Id*. ¶ 31.)

These allegations, however, are directly contradicted by documents appended to the Original

Complaint.  Specifically, in response to the Fifth Grievance, Defendant Stanaway notified

Plaintiff that the mail room had not received correspondence regarding a denial of legal mail and

requested that Plaintiff provide her with more information to allow IGRC to investigate his

complaint.  (ECF No. 2-2 at 22.)  Accordingly, the Court dismisses Plaintiff's claim against

Defendant Stanaway.

### D.  Defendant Wilson

Defendants argue that the Court should dismiss Defendant Wilson from the case because

the Amended Complaint contains no allegations against him.  (Defs.' Mot. at 24.)  Plaintiff

apparently concedes this point.  (Pl.'s Opp. at 5.)  Therefore, the Court dismisses any claims

against Defendant Wilson.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The remaining claims are Plaintiff's Eighth Amendment claims against Defendants Cocuzza and Thorpe; all other Defendants are dismissed from the case. Defendants Cocuzza and Thorpe are directed to file an answer to the remaining claims within 30 days hereof. The parties are directed to appear for an initial pre-trial conference on September 15, 2016 at 10:00 a.m. Defendants are directed to appear in person. Defendants' counsel shall make arrangements with the appropriate correctional facility for Plaintiff to appear via telephone conference. The parties are further directed to submit a completed case management plan. The Court respectfully directs the Clerk to terminate the motion at ECF No. 54.

Dated:   July 12, 2016                          SO ORDERED:
         White Plains, New York

                                         _____
                                         NELSON S. ROMÁN
                                         United States District Judge